UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUDITH MAYSONET,

                              Plaintiff

                                                           DECISION AND ORDER

-vs-

                                                           05-CV-6288 CJS

JO ANNE B. BARNHART,
Commissioner of Social Security,

                              Defendant.

_____


APPEARANCES

For the Plaintiff:            Catherine M. Callery, Esq.
                              Robert Cisneros, Esq.
                              Empire Justice Center
                              One West Main Street, 2nd Floor
                              Rochester, New York 14614

For the Defendant:            Brian M. McCarthy, Esq.
                              Assistant United States Attorney
                              Western District of New York
                              100 State Street
                              Rochester, New York 14614


INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner"), which denied

plaintiff's application for Supplemental Security Income ("SSI") benefits.  Now before

the Court is defendant's motion for judgment on the pleadings [#7] and plaintiff's cross-

1

motion [#10] for the same relief.  For the reasons stated below, defendant's motion is

denied, plaintiff's motion is granted, and this matter is remanded for further

administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI benefits on April 25, 2000 (29)[1], claiming to be disabled

due to "carpal tunnel syndrome [and a] pinched nerve in [her] neck." (45).  That

application was denied on October 10, 2000. (7, 69)  Plaintiff applied for SSI benefits

again on June 11, 2001, claiming to be disabled due to "carpal tunnel, pinched nerve,

high blood pressure, sleep disorder, diabetic, high cholesterol, [and] severe allergies."

(60).  The Commissioner denied the application, and plaintiff requested a hearing

before an Administrative Law Judge ("ALJ"), which was held on July 29, 2003.  The ALJ

issued his Decision denying benefits on December 1, 2003.  Plaintiff appealed the

ALJ's determination to the Appeals Council, which denied her request for review on

April 4, 2005.  Plaintiff commenced the instant action on June 2, 2005.

## FACTUAL BACKGROUND

At the time of the administrative hearing in this matter, plaintiff was 41 years old

and had a GED certificate.  Plaintiff was previously employed as a factory worker, in

both a bagel factory and a cannery.  Plaintiff worked 12-hour shifts, which required her

to stand for up to eleven hours, and to handle and grasp both large and small objects

for up to 8 hours. (46)  Plaintiff stopped working in March 1999.  When she initially

applied for SS benefits in April 2000, she wrote: "[I] can't lift over 10 lbs., can't pick up

---

[1]Unless otherwise noted, citations are to pages of the administrative record.

things, hardly no feeling in hands as far was buttoning or picking up things." (45)  In July 2001, plaintiff wrote that she lived with her two sons, one of whom was age 14. (73) She stated that she experienced pain in her hands, neck, feet, and fingers, and she also complained of great difficulty sleeping due to pain and a "sleep disorder." (76-77) She further indicated that she experienced pain performing household chores, and that she often needed help with such tasks from her son.

MEDICAL EVIDENCE[2]

An MRI of plaintiff's cervical spine taken on February 26, 1999 was normal. (151)  X-rays of her lumbosacral spine taken in June 2003 were similarly normal. (373)

James B. Mark, M.D. ("Mark"), one of plaintiff's treating physicians, completed a residual functional capacity assessment form on December 21, 1999, stating that plaintiff was "very limited" in her ability to lift, carry, push, pull, bend, and use her hands, but otherwise had no limitations. (143).

On April 21, 2000, Heidi Schwarz, M.D. ("Schwarz"), plaintiff's neurologist, stated that plaintiff had "very poor responses" to prior carpal tunnel surgeries, and that she was continuing to have numbness and tingling in her hands. (145) Schwarz recommended that plaintiff have additional carpal tunnel release surgery on her right wrist, and "possibly" also on her left.  As far as plaintiff's ability to work, Schwarz wrote: "I have limited her work week to 40 hours and mandated that she have a job that allows her to alternate between sitting and standing and allows her to rest every two hours if her hand is hurting." (146) Some two years later, Schwarz completed a residual

---

[2]The following is a summary of the medical evidence that was before the Administrative Law Judge.

functional capacity assessment, stating that plaintiff was "moderately limited" with regard to walking, lifting, carrying, pushing, pulling, bending, using her hands, and functioning at work at a consistent pace. (312)

Frederick Kaempffe, M.D. ("Kaempffe") performed carpal tunnel release surgery on plaintiff's left wrist on July 11, 2000 (163), and performed the same procedure on her right wrist on August 15, 2000. (170)  Kaempffe reported in November 2000 that plaintiff's recovery was satisfactory, noting: "Overall, the patient is improved, noting no numbness or tingling, minimal pain, less swelling, and less limitations with activities of daily living.  She does note some AM digital stiffness." (219) Kaempffe assessed plaintiff's ability to work on January 2, 2002, stating: "She could work as long as there was no pushing, pulling or lifting more than 10# [sic] with either UE [upper extremity], and no repetitive grasping with each hand." (343) Kaempffe added to these restrictions on August 29, 2002, by stating that plaintiff should do "no computer keying more than 2 hours without a 15 minute rest period." (345)

On October 10, 2000, a non-examining agency review physician wrote that plaintiff was "limited" with regard to repetitive use of her hands, specifically as to handling and fingering. (193)  On November 5, 2001, another non-examining agency review physician opined that plaintiff had "the functional capacity to do sedentary work with limited repetitive hand movements." (83)

Michael Obrecht, D.O. ("Obrecht"), a non-treating physician, performed an independent medical examination of plaintiff on September 12, 2001.   At that time, plaintiff complained of pain in her hands that was "8 out of 10 in severity."  Plaintiff further told Obrecht that she could not open a jar, put butter on toast, or pick up coins.

4

(275) Plaintiff reportedly stated that her hand surgeries had resulted in "very limited" improvement in her condition.  On exam, Obrecht found that plaintiff had full range of motion in her wrists. (277) As for her hands, Obrecht found that plaintiff had "only a fair ability to tie a string and open a small cap," and a "good ability to operate a small button, remove a large cap, and zip a zipper," and that she had diminished strength in both hands. (278)  Overall, Obrecht concluded: "The claimant has a moderate restriction due to decreased handshake and grip strength bilaterally.  The claimant also had a mild restriction for holding small objects and using fingers for manipulation. Crawling, crouching, kneeling and stooping are limited secondary to body habitus."[3] (279)

## STANDARDS OF LAW

_____42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive."  The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

For purposes of the Social Security Act, disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[3] Plaintiff was morbidly obese.

5

mental impairment which can be expected to last for a continuous period of not less

than 12 months."  42 U.S.C. § 423(d)(1)(A); *Schaal*, 134 F.3d at 501.

> The SSA has promulgated administrative regulations for determining when a
> claimant meets this definition.  First, the SSA considers whether the claimant is
> currently engaged in substantial gainful employment.  If not, then the SSA
> considers whether the claimant has a "severe impairment" that significantly limits
> the "ability to do basic work activities.  If the claimant does suffer such an
> impairment, then the SSA determines whether this impairment is one of those
> listed in Appendix 1 of the regulations.  If the claimant's impairment is one of
> those listed, the SSA will presume the claimant to be disabled.  If the impairment
> is not so listed, then the SSA must determine whether the claimant possesses
> the "residual functional capacity" ["RFC"] to perform his or her past relevant work.
> Finally, if the claimant is unable to perform his or her past relevant work, then the
> burden shifts to the SSA to prove that the claimant is capable of performing "any
> other work."

*Schaal*, 134 F.3d at 501 (Citations omitted).  At step five of this five-step sequential

analysis, defendant may carry her burden by resorting to the Medical Vocational

Guidelines or "grids" found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2. *Pratts v.*

*Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996)(citation omitted); *see also*, SSR 83-10 (Noting

that in the grids, "the only impairment-caused limitations considered in each rule are

exertional limitations.")  However, if a claimant has nonexertional impairments which

"significantly limit the range of work permitted by his exertional limitations," then

defendant cannot rely upon the grids, and instead "must introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the economy which

claimant can obtain or perform."[4] *Pratts v. Chater*, 94 F.3d at 39; *see also*, 20 C.F.R. §

---

[4]"Exertional limitations" are those which affect an applicant's ability to meet the strength demands
of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  "Non-exertional
limitations" are those which affect an applicant's ability to meet job demands other than strength demands,
such as anxiety, depression, inability to concentrate, inability to understand, inability to remember, inability
to tolerate dust or fumes, as well as manipulative or postural limitations, such as the inability to reach,
handle, stoop, climb, crawl, or crouch. 20 C.F.R. 416.969a.

416.969a(d).[5]

Under the regulations, a treating physician's opinion is entitled to controlling

weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and
> severity of your impairment(s) is well-supported by medically acceptable
> clinical and laboratory diagnostic techniques and is not inconsistent with
> the other substantial evidence in your case record, we will give it
> controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2).  However, "[w]hen other

substantial evidence in the record conflicts with the treating physician's opinion . . .  that

opinion will not be deemed controlling.   And the less consistent that opinion is with the

record as a whole, the less weight it will be given." *Snell v. Apfel*, 177 F.3d 128, 133 (2d

Cir. 1999)(*citing* 20 C.F.R. § 404.1527(d)(4)).

Thus, where a treating physician's opinions are inconsistent with other

substantial evidence in the record, his opinion is not entitled to controlling weight. *Snell*

*v. Apfel*, 177 F.3d at 133.  In such a case, the ALJ not only must decide what, if any,

lesser weight to assign to the treating physician's opinion, but must also explain that

decision. *Id*. ("Failure to provide 'good reasons' for not crediting the opinion of a

claimant's treating physician is a ground for remand.")(citation omitted).   The

Commissioner's regulations state that, "[u]nless we give a treating source's opinion

controlling weight . . . we consider all of the following factors in deciding the weight we

---

[5]C.F.R. § 416.927(d) provides, in relevant part, that, "[w]hen the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect your ability to meet both the strength [exertional] and demands of jobs other than the strength demands [nonexertional], we consider that you have a combination of exertional and nonexertional limitations or restrictions. . . . [W]e will not directly apply the rules in appendix 2 [the grids] unless there is a rule that directs a conclusion that you are disabled based upon your strength limitations; otherwise the rule provides a framework to guide our decision."

give to any medical opinion. (1) Examining relationship.... (2) Treatment relationship....

(3) Supportability .... (4) Consistency .... (5) Specialization .... (6) Other factors." 20

C.F.R. § 416.927(d)(2); *see also*, 20 C.F.R. § 404.1527(d); *Schaal v. Apfel*, 134 F.3d at

504 (Finding that the ALJ did not properly apply the treating physician rule, in part,

because he "failed to consider all of the factors cited in the regulations.").  If the ALJ

fails to properly weigh evidence, the court cannot do so; instead, the matter must be

remanded. *See, Schaal v. Apfel*, 134 F.3d at 504 ("It is for the SSA, and not this court,

to weigh the conflicting evidence in the record.")(citation omitted); *accord, Clark v.

Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).  Moreover, the ALJ should not

reject a treating physician's opinion as being unsupported, without first attempting to

develop the record. *See, Schaal v. Apfel*, 134 F.3d at 505 ("[E]ven if the clinical findings

were inadequate, it was the ALJ's duty to seek additional information from [the

physician] *sua sponte*."); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)("The ALJ

has an obligation to develop the record in light of the non-adversarial nature of the

benefits proceedings, regardless of whether the claimant is represented by counsel.");

*Rosa v. Apfel*, 1998 WL 437172 at *4 (S.D.N.Y. Jul. 31, 1998)("A simple follow-up

request from the ALJ could have resulted in an assessment of the claimant's residual

functional capacity from his treating physician.").

Administrative Law Judges are required to evaluate a claimant's credibility

concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states

in relevant part:

> In determining whether you are disabled, we consider all your symptoms,
> including pain, and the extent to which your symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in § 404.1528 (b) and (c). By other evidence, we mean the kinds of evidence described in §§ 404.1512(b) (2) through (6) and 404.1513(b) (1), (4), and (5) and (e). These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.

20 C.F.R. § 404.1529(a); *see also*, 20 C.F.R. 416.929 (SSI applications).

### THE HEARING AND THE ALJ'S DECISION

Plaintiff testified at the hearing, appearing with a legal representative.  Plaintiff testified that she takes ibuprofen and Refalin for pain medication.  She also testified that she could work repetitively with her hands for "maybe 10 minutes or more maybe, not much [sic]." (404)  Plaintiff further stated that she performs limited housework, and has her sons do most of the work, such as carrying laundry and carrying groceries. Additionally, she indicated that she could "maybe" lift and carry "a couple" of pounds, and that she was only able to sit for 10 or 15 minutes due to pain in her back. (406)

Subsequent to the hearing, the ALJ determined that he needed to take additional proof from a vocational expert ("VE"), which he proposed to do via written interrogatories.  In that regard, the ALJ prepared proposed questions for the VE, and then submitted them to plaintiff's representative.  The first proposed hypothetical question asked the VE to assume a claimant who was able to perform a full range of sedentary work, except that she would need to alternate between sitting and standing, and be allowed to "rest for 5 minutes every two hours, as needed." (318) The second

proposed hypothetical asked the VE to further consider that the claimant could perform "no repetitive grasping with each hand." (319) Plaintiff's representative responded by proposing certain changes to the proposed hypotheticals, but she generally agreed with them, and she specifically agreed with the portion of the question that asked the VE to consider that the claimant needed to "rest for 5 minutes every two hours, as needed." (320) The ALJ accepted the comments of plaintiff's representative, and asked the hypothetical requested by claimant's representative. (321-27)

In response to the first hypothetical described above, the VE stated that there were two jobs that such a claimant could perform, namely, Order Clerk [DOT 209.567 014] and Call-Out Operator [DOT 237.367 014]. (330)  In response to the second hypothetical, the VE stated that such a claimant could still perform the job of Call-Out Operator even with a restriction on repetitive grasping, and could also perform the job of Surveillance System Monitor [DOT 379.367 010]. (331)  Plaintiff's representative submitted a written response, stating that plaintiff could not perform the jobs identified by the VE because they required repetitive grasping, and that there were not a legally sufficient numbers of surveillance system monitor jobs available.

The ALJ issued a decision denying plaintiff's application on December 1, 2003. Using the five-step sequential analysis discussed above, the ALJ found that plaintiff was not engaged in substantial gainful employment, and that she had severe impairments, namely, carpal tunnel syndrome, pinched nerve, diabetes, obesity, and "an alleged sleep disorder," though these impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, of the Commissioner's Regulations.  The ALJ next found that plaintiff could not perform her

10

past relevant work.  In that regard, the ALJ determined that plaintiff possessed the residual functional capacity "to perform the full range of sedentary work with the following additional limitations: the right to alternate between sitting and standing in 20 minute intervals at work; rest for five minutes every two hours as needed; and, no repetitive grasping with each hand." (6L)  Finally, at the last step of the sequential analysis, the ALJ accepted the VE's testimony and concluded that plaintiff could perform the jobs of Call-Out Operator and Surveillance System Monitor, and that those jobs existed in sufficient numbers in the regional and national economy. (6M) Consequently, the ALJ found that plaintiff was not disabled.

ANALYSIS

Plaintiff essentially contends that the Commissioner's decision is erroneous in the following three respects: 1) the hypotheticals posed to the VE were incomplete; 2) plaintiff is physically incapable of performing the jobs identified by the VE; and 3) the ALJ did not properly evaluate plaintiff's credibility.  With regard to the hypotheticals posed to the VE, plaintiff contends that they failed to take into account her limited ability to handle, manipulate, and otherwise use her hands repetitively, failed to recognize that she cannot work on a continual basis at a consistent pace, and improperly indicated that she would need only 5 minutes of rest every two hours when Kaempffe had indicated that she would need 15 minutes of rest.[6]  Plaintiff makes this argument notwithstanding the fact that her legal representative approved the questions prior to their being sent to the VE.  As for her alleged inability to perform the jobs identified by

---

[6]Kaempffe's statement in this regard pertained specifically to the use of a computer keyboard.

the VE, plaintiff contends that the job of Call-Out Operator requires repetitive grasping, and that the job of Surveillance System Monitor requires finger dexterity.  Additionally, she alleges that there are not sufficient numbers of these jobs available.  As for the ALJ's evaluation of her credibility, plaintiff contends that the ALJ failed to discuss the factors set forth in 20 U.S.C. § 416.929, and instead, made only a "conclusory statement" that her claims were "not consistent with the detailed medical findings and [were] not supported by the opinions of the examining and treating physicians." (Pl. Memo [#10] at 2)  Plaintiff also maintains that the ALJ "misrepresented [her] testimony," by overstating her ability to perform activities of daily living.

Defendant initially opposed plaintiff's application, however, at oral argument, defendant's representative conceded that the hypotheticals posed to the VE were incomplete, because they did not contain all of the limitations identified by plaintiff's treating physicians.  Consequently, defendant agreed that a remand for a new hearing was appropriate.

Since the parties agree that the hypotheticals posed to the VE were incomplete, the case should be remanded for further administrative proceedings[7], so that the ALJ can obtain additional information from the VE.  In that regard, it will of course be the Commissioner's burden, at the fifth step of the sequential analysis, to establish by substantial evidence that plaintiff can actually perform the specific duties of any jobs

---

[7]During oral argument, plaintiff's counsel argued that the Court should remand the case solely for the calculation of benefits.  However, the Court finds that this would not be appropriate here, especially since plaintiff's representative at the hearing agreed to the wording of the hypothetical that the parties now agree was incomplete. See, *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir.2000) (Stating that a remand for the calculation of benefits may be appropriate where "the reversal is based solely on the Commissioner's failure to sustain his burden.") (Citation and internal quotation marks omitted).

identified by the VE, and that such jobs exist in sufficient numbers.  Remand is also

appropriate since, as plaintiff notes, the ALJ's discussion of plaintiff's credibility is very

brief, making it difficult for the Court to analyze whether or not he properly applied 20

C.F.R. § 416.929.

CONCLUSION

Defendant's motion for judgment on the pleadings [#7] is denied, and plaintiff's

cross-motion [#10] for an order remanding the case for further administrative

proceedings is granted.  This matter is remanded, pursuant to 42 U.S.C. § 405(g),

sentence four, for further administrative proceedings consistent with this Decision and

Order.

So Ordered.

Dated: Rochester, New York
       August 28, 2006

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge